UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PHILLIP G. BROWN,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>　　　　　　　　Defendant. | Case No. C17-1470 RBL<br><br>**ORDER AFFIRMING DEFENDANT'S DENIAL OF BENEFITS** |

## I.　　INTRODUCTION

This matter is before the Court on Plaintiff Phillip Brown's Complaint (Dkt. 1) for review of the Social Security Commissioner's denial of his application for disability insurance ("DI") and supplemental security income ("SSI") benefits.

Brown suffers from degenerative changes of the bilateral knees, lumbar spine, and left ankle; diabetes mellitus; neuropathy; affective disorder (bipolar vs. depression); anxiety-related disorder; and substance use disorder (alcohol). *See* Administrative Record ("AR") (Dkt. 10) 859. He applied for DI and SSI benefits in July 2011. AR 172-79. Brown alleged that his disability began on October 4, 2010, and later amended his claim to seek benefits for a closed period through December 31, 2015. *See* AR 172, 174, 1215. Both applications were denied upon initial administrative review and on reconsideration. AR 77, 85, 96-97, 105-06.

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 1

Administrative Law Judge ("ALJ") Cynthia Rosa held a hearing in April 2013, and issued a decision denying benefits the following month. AR 11-29, 34-68. The Appeals Council denied review on October 14, 2014. AR 1. Brown then sought review before this Court.

On September 25, 2015, Judge John C. Coughenour entered an order remanding the case for further administrative proceedings pursuant to a stipulation from the parties. AR 1022-23. Based on the Court's order, the Appeals Council issued an order for remand on October 21, 2015. AR 1024-29.

ALJ Tom Morris held a second hearing in this matter on December 15, 2016. AR 929-93. On June 19, 2017, he issued a decision denying Brown benefits. AR 850-90. The Appeals Council did not assume jurisdiction of the case, nor did Brown file written exceptions to the ALJ's decision. *See* Complaint at ¶ 3.6. The ALJ's decision thus became the Commissioner's final decision as of August 22, 2017. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d). On September 28, 2017, Brown filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Complaint.

Brown argues that the Commissioner's final decision to deny benefits should be reversed and remanded for an award of benefits or further administrative proceedings. Pl.'s Op. Br. (Dkt. 17) at 1-2. He makes two groups of arguments, one of which is based on Brown's effort to get ALJ Morris to recuse himself, and the other of which is based on the substance of the ALJ's decision. In the first group, Brown argues that ALJ Morris erred by refusing to admit evidence relating to Brown's claim of bias, and that the Commissioner violated due process by failing to provide an unbiased ALJ. Pl.'s Op. Br. at 2. In the second group, Brown argues that ALJ Morris erred in (1) rejecting Brown's symptom testimony; (2) discounting the opinions of examining doctors James Czysz, Psy.D, Melanie Mitchell, Psy.D., and Wayne Dees, Psy.D.; (3) evaluating

the opinion of Shawn Kenderline, Ph.D.; (4) finding that Brown was not disabled when not using drugs or alcohol; and (5) finding that Brown would have up to one unexcused absence every two months. *Id.* at 1-2.

## II. DISCUSSION

**A. Brown's Bias Claims**

**1. The ALJ Did Not Err in Refusing to Admit Evidence Relating to Brown's Claim of Bias**

Brown presented nearly 2,000 pages of materials to ALJ Morris, including redacted copies of dozens of prior ALJ decisions, along with a request that ALJ Morris recuse himself from deciding this case due to bias. *See id.* attachments. ALJ Morris considered those materials, but refused to admit them into the administrative record because they related to the adjudication of other individuals' claims, and because they did not constitute evidence relevant to Brown's alleged disability. *See* AR 853-56.

Brown's counsel has presented this same or a similar package of evidence to multiple ALJs in multiple disability proceedings, and the judges in this district have repeatedly rejected his arguments that the ALJ should have incorporated that evidence into the record. *See, e.g.*, *Seibel v. Berryhill*, No. C14-1973 TSZ, 2017 WL 615195, at *3 (W.D. Wash. Feb. 15, 2017); *Cope v. Colvin*, No. 2:15-cv-01744 JRC, 2016 WL 6439940, at *7-11 (W.D. Wash. Nov. 11, 2016); *Smith v. Colvin*, No. C14-1530 TSZ, 2016 WL 8710029, at *3 (W.D. Wash. Oct. 14, 2016); *Mostafavinassab v. Colvin*, No. C15-1280 TSZ, 2016 WL 4547129, at *1 n.1 (W.D. Wash. Sept. 1, 2016); *Wrightman v. Colvin*, No. C15-01557 BHS, 2016 WL 4425318, at *2-3 (W.D. Wash. Aug. 22, 2016); *Yost v. Colvin*, No. C15-1279 TSZ, 2016 WL 2989957, at *2-6 (W.D. Wash. May 24, 2016). The Court agrees with those decisions and finds that ALJ Morris did not err in considering but refusing to admit the evidence Brown's counsel presented

regarding bias.

**2.    The Commissioner Did Not Deprive Brown of Due Process**

In a similar vein, Brown argues that the Commissioner deprived him of due process by failing to adequately address his claim of bias. *See* Pl.'s Op. Br. at 19-24. While Brown contends that the Court may not decide the ultimate question of bias, his argument implies that ALJ Morris was in fact biased. *See id.* at 23-24. Briefly, the Court again notes that Brown's counsel has raised this argument numerous times, and the judges in this district have repeatedly rejected it. *See Seibel*, 2017 WL 615195, at *3 n.9; *Cope*, 2016 WL 6439940, at *7-11; *Smith*, 2016 WL 8710029, at *3; *Mostafavinassab*, 2016 WL 4547129, at *1 n.1; *Wrightman*, 2016 WL 4425318 at *2-3; *Yost*, 2016 WL 2989957, at *2-6. The Court agrees with those decisions.

Brown's explicit argument here is that the Commissioner deprived him of due process by failing to adequately resolve his contention that ALJ Morris is biased against a class of individuals. *See* Pl.'s Op. Br. at 23-24. Brown's argument is primarily based on a single paragraph from ALJ Morris's decision. After discussing the evidence of bias that Brown submitted, ALJ Morris stated:

> Mr. Rutzick submitted an allegation of general bias or a pattern of bias or misconduct by an ALJ against a group or particular category of individuals. This issue is outside the scope of the issues I am adjudicating in this particular case. If Mr. Rutzick would like more information about how the Social Security Administration handles those types of allegations, he can review Social Security Ruling 13-1p.

AR 856.

Brown's argument fails. Due process does not demand a specific procedure; it simply means that a claimant must have notice and a fair opportunity to be heard before being deprived of a recognized property right. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'")

(quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (alteration in original). Here, ALJ Morris gave Brown an opportunity to be heard.[1] ALJ Morris considered Brown's general arguments, determined that he was not biased, and directed Brown to Social Security Ruling ("SSR") 13-1p, 2013 WL 633939 (Jan. 29, 2013), which describes three processes by which the Social Security Administration ("SSA") handles claims of ALJ bias, prejudice, or misconduct. *See* AR 853-56. Brown had a fair opportunity to present his bias claim to the SSA, and thus has not shown that his due process rights were violated.

**B.     Brown's Substantive Claims**

**1.     The ALJ Did Not Err in Rejecting Brown's Symptom Testimony Regarding His Mental Impairments**

Brown argues that the ALJ erred in rejecting his subjective symptom testimony regarding his mental impairments. *See* Pl.'s Op. Br. at 17-18. The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged. *Id.* ALJ Morris found that Brown met this step because if he stopped abusing alcohol his medically determinable impairments could reasonably be expected to cause the

---

[1] A fair opportunity to be heard necessarily requires that the ALJ be unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). The Court presumes, however, that ALJ's are unbiased. *See id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005). And, as mentioned above, Brown did not overcome this presumption.

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 5

symptoms he alleged.  AR 865.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).  In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found that Brown's testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the medical evidence and other evidence in the record during periods when he abstains from substance use."  AR 865.  The ALJ gave five reasons for this determination: (1) Brown's symptom testimony was inconsistent with the medical evidence; (2) he had not been fully compliant with treatment recommendations; (3) his symptom testimony was contradicted by his daily activities; (4) Brown received unemployment benefits during the period in which he claimed to be disabled; and (5) there was a situational component to Brown's alleged symptoms.  *See* AR 869-75.

        a.    <u>Inconsistency with Medical Evidence</u>

The primary reason ALJ Morris rejected Brown's symptom testimony was because he found it to be inconsistent with the medical evidence.  *See* AR 869-73.  An ALJ may reasonably reject the claimant's subjective symptom testimony when it is inconsistent with or contradicted by the medical evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  ALJ Morris supported his interpretation of the medical evidence with dozens of

specific citations. *See* AR 869-73. Brown has not established that ALJ Morris's interpretation of this evidence was unreasonable, and thus the Court finds that ALJ Morris did not err in rejecting Brown's symptom testimony regarding his mental impairments on this basis. *See Fair*, 885 F.2d at 603 ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision."); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

          b.      <u>Failure to Fully Comply with Treatment Recommendations</u>

The ALJ further rejected Brown's symptom testimony because he was not fully compliant with his providers' treatment recommendations. *See* AR 873-74. "[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can constitute a sufficient reason for discrediting a claimant's symptom testimony. *Fair*, 885 F.2d at 603. ALJ Morris cited several places in the record where Brown was not fully compliant in taking his medications. AR 873-74, 3181, 3681, 3848, 4005. This was a valid reason to discount Brown's symptom testimony.

          c.      <u>Contradiction by Daily Activities</u>

ALJ Morris additionally rejected Brown's symptom testimony because it was contradicted by his daily activities. *See* AR 874-75. An ALJ may reject a claimant's symptom testimony based on the claimant's daily activities if those activities contradict the claimant's testimony or reflect transferable work skills. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Morgan*, 169 F.3d at 600. Here, the ALJ noted that during periods of sobriety, Brown worked seven hours per day making espresso drinks for people at World Vision, worked a Saturday night shift as a volunteer at the Bread of Life Mission in addition to his five-day work

week, and worked several warehouse-type jobs. *See* AR 874-75, 1118-22, 1145-46, 3167, 3285, 3458, 3844. The ALJ's conclusion is a rational interpretation of the evidence, and was thus a valid reason for rejecting Brown's symptom testimony.

    d. <u>Receipt of Unemployment Benefits</u>

  The ALJ further cited Brown's receipt of unemployment benefits during his alleged period of disability as a reason to discount Brown's symptom testimony. *See* AR 875. "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime . . . ." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). The record indicates that Brown collected unemployment benefits from the first quarter of 2011 through the fourth quarter of 2012. AR 185-87, 192-94. Brown admitted during his testimony that to receive these benefits, he held himself out for fulltime work. AR 947-48. The ALJ reasonably rejected Brown's symptom testimony based on these facts. *See Fennell v. Berryhill*, 721 F. App'x 652, 655 (9th Cir. 2018).

    e. <u>Situational Component</u>

  The ALJ's final reason for rejecting Brown's symptom testimony is his only invalid reason. ALJ Morris cited to several places in the record referencing non-medical stressors in Brown's life, such as a terminally ill relative, an uncle's death, and his father's worsening health. AR 875. He then concluded—with no substantive analysis—that Brown's symptoms were at least in part due to these situational factors rather than his medically determinable impairments. *Id.* This was not a clear and convincing reason to reject Brown's symptom testimony.

  Despite this error, the Court upholds the ALJ's rejection of Brown's symptom testimony. ALJ Morris gave a number of valid reasons for rejecting Brown's symptom testimony, and those

reasons remain valid despite his inclusion of one erroneous reason. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). His determination thus stands.

**2.     The ALJ Did Not Err in Discounting the Opinions of Dr. Czysz, Dr. Mitchell, and Dr. Dees**

Brown argues that the ALJ erred in discounting the opinions of Dr. Czysz, Dr. Mitchell, and Dr. Dees. All three are examining doctors. *See* AR at 671-75, 771-76, 3035-43. An ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the opinion of an examining doctor when it is contradicted. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995)). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

As an initial matter, each of the three examining doctors listed Global Assessment of Functioning ("GAF")[2] scores in their opinions, which the ALJ rejected. *See* AR 878-79. The ALJ rejected these scores because they "represent[ed] only snapshots of the claimant's functioning for a particular moment in time," and GAF scores "consider secondary factors, such as limited finances and unemployment, that are irrelevant to the determination of disability. AR at 878. This reasoning generally accords with the reasoning of the American Psychiatric Association, which dropped the GAF score from its *Diagnostic and Statistical Manual of Mental Disorders* because it lacked clarity and had questionable value in routine practice. *See Golden*,

---

[2] GAF is a numeric scale from 0 to 100 that was intended to reflect "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Golden v. Shulkin*, 29 Vet. App. 221, 225 (Vet. App. 2018) (internal citation and quotation marks omitted).

29 Vet. App. at 224. The Court thus finds no error in the ALJ's rejection of GAF scores here.

   a. <u>Dr. Czysz</u>

Dr. Czysz examined Brown on June 7, 2011. *See* AR 671-74. He diagnosed Brown with bipolar II disorder and alcohol dependence in early full remission. AR 672. Dr. Czysz opined that Brown had marked limitations in his ability to perform routine tasks without undue supervision, and communicate and perform effectively in a work setting with even limited public contact. AR 673. He opined that Brown would be severely limited in his ability to maintain appropriate behavior in a work setting. *Id.* He further opined that Brown's mental health symptoms were affected by his alcohol abuse, but that treatment would not be likely to improve Brown's ability to function in a work setting. *Id.*

The ALJ gave little weight to Dr. Czysz's opinions. AR 877. He gave three reasons for this determination: (1) Dr. Czysz performed a one-time examination and reviewed no other medical records; (2) Dr. Czysz's opinions were inconsistent with the longitudinal medical record and Brown's daily activities when sober; and (3) Dr. Czysz's opinions were issued in June 2011, at which time Brown was collecting unemployment benefits by presenting himself as ready, willing, and able to perform fulltime work. AR 877-78.

The ALJ's first reason for discounting Dr. Czysz's opinions, while relevant to weight, is insufficient on its own. Examining doctors regularly perform only a single examination. If an ALJ could reject examining opinions simply because they were based on a single examination, the ALJ could essentially reject any examining doctor's opinion regardless of its ultimate merit. The Court will not permit such a blanket rejection, as it is neither specific nor legitimate. *See Ford v. Berryhill*, No. C17-1343JLR, 2018 WL 2002806, at *2 (W.D. Wash. Apr. 30, 2018); *Hartje v. Astrue*, No. C09-5486KLS, 2010 WL 3220615, at *13 (W.D. Wash. Aug.13, 2010)

("[T]he fact that a medical source has based his or her opinion on a one-time examination is not a valid basis for rejecting that opinion, given that the opinions of examining medical sources in general tend to be based on only one examination, and that the Commissioner himself often has based his determinations of non-disability on such one-time examinations."); *Lopez v. Colvin*, 194 F. Supp. 3d 903, 917 (D. Ariz. July 11, 2016) (the fact that a doctor's "opinion was based on a single examination is relevant, but is not, standing alone, a legitimate reason for rejecting his opinion. It simply cannot be said that every one-time examination is inaccurate.").

The ALJ's second reason for discounting Dr. Czysz's opinions was, however, sufficiently specific and legitimate. *See Bayliss*, 427 F.3d at 1217; *Reddick*, 157 F.3d at 725. ALJ Morris summarized the medical evidence in detail and explained how it, along with Brown's daily activities when sober, contradicted Dr. Czysz's opinions on Brown's work limitations. *See* AR 869-75, 878.

The ALJ's third reason for rejecting Dr. Czysz's opinions was also specific and legitimate. The fact that Brown held himself out as available for fulltime work undermined Dr. Czysz's opinions on Brown's work limitations. *See Fennell*, 721 F. App'x at 654; *Carmickle*, F.3d at 1161-62.

Although ALJ Morris included an erroneous reason in his decision to reject Dr. Czysz's opinions, his error was harmless because he also included two valid reasons. *See Molina*, 74 F.3d at 1115. The ALJ thus did not harmfully err in rejecting Dr. Czysz's opinions.

    b. <u>Dr. Mitchell</u>

Dr. Mitchell examined Brown on October 26, 2012. *See* AR 771-76. She diagnosed Brown with bipolar I disorder, and alcohol dependence in early full remission. AR 772. Dr. Mitchell opined that Brown had marked limitations in a number of basic work activities. AR

773.  She further opined that these impairments were not primarily the result of alcohol use within the prior 60 days.  AR 774.  However, Dr. Mitchell determined that Brown's impairments would only be expected to persist for nine months.  *Id.*

The ALJ gave little weight to Dr. Mitchell's opinions.  AR 877.  He gave four reasons for this determination: (1) Dr. Mitchell performed only a one-time examination and reviewed only Dr. Czysz's evaluation; (2) Dr. Mitchell's opinions were inconsistent with the longitudinal medical record and Brown's daily activities when sober; (3) Dr. Mitchell's opinions were issued in October 2012, while Brown was presenting himself as able to perform fulltime work to collect unemployment benefits; and (4) Dr. Mitchell's opinion was only intended to apply for nine months.  AR 878.

The ALJ's first three reasons here mirror the reasons he gave for rejecting Dr. Czysz's opinions.  *See id.*  The Court rejects the first reason but accepts the second and third reasons under the rationale discussed above.  *See supra* Part II.B.2.a.

ALJ Morris's final reason for rejecting Dr. Mitchell's opinions—that it was only intended to apply for nine months—is based on an inaccurate representation of Dr. Mitchell's evaluation.  Dr. Mitchell did not state that her opinions would last for nine months, but that she expected Brown's limitations to last for nine months with adequate treatment.  *See* AR 774.  This casts doubt on the ALJ's analysis here.  Nonetheless, because the ALJ presented valid reasons for rejecting Dr. Mitchell's opinions, any error was harmless.  *See Molina*, 674 F.3d at 1115.

   c. <u>Dr. Dees</u>

Dr. Dees examined Brown on August 29, 2013.  *See* AR 3035-43.  Much like Dr. Czysz and Dr. Mitchell, he diagnosed Brown with bipolar I disorder, depressed, severe with psychosis; generalized anxiety disorder with symptoms of panic; and alcohol dependence in early full

remission by report. AR 3037. Dr. Dees opined that Brown was markedly limited in his ability to adapt to changes in a routine work setting and set realistic goals and plan independently. AR 3037-38. He opined that Brown had severe limitations in his ability to maintain appropriate behavior in a work setting and complete a normal work day and week without interruptions from his psychologically-based symptoms. AR 3038. Dr. Dees opined that these impairments would last eight or more months with available treatment. *Id.*

The ALJ gave Dr. Dees's opinions little weight. AR 877-78. He again relied on the fact that Dr. Dees conducted only a one-time examination, and reviewed only Dr. Mitchell's evaluation. AR 878. As discussed above, this was not a specific or legitimate reason to discount Dr. Dees's opinions. *See supra* Part II.B.2.a.

ALJ Morris also rejected Dr. Dees's opinions because they were contradicted by the longitudinal medical record and Brown's daily activities. AR 878. Moreover, he specifically noted that Dr. Dees's opinions were inconsistent with Brown's ongoing volunteer activities at World Vision, and "treatment notes during periods of sobriety, which demonstrate no evidence of psychosis or chronic panic attacks when [Brown] abstains from alcohol." *Id.* The Court again finds that ALJ Morris has adequately supported his determination here. *See supra* Part II.B.2.a. The ALJ accordingly did not harmfully err in rejecting Dr. Dees's opinions.

### 3. The ALJ Did Not Err in Evaluating Dr. Kenderline's Opinions

Dr. Kenderline examined Brown on October 6, 2015. *See* AR 3969-75. He diagnosed Brown with alcohol dependence and anxiety disorder. AR 3970. Dr. Kenderline opined that Brown had moderate limitations in a number of basic work activities. AR 3971. He did not believe these impairments were primarily due to Brown's alcohol abuse. AR 3972.

The ALJ gave partial weight to Dr. Kenderline's opinions. AR 877. He agreed that

Brown had moderate limitations in mental functioning. *Id.* But ALJ Morris tempered his agreement by noting that Brown's medical records and daily activities indicated he was capable of fulltime work when sober. *Id.*

Brown argues that the ALJ erred because he failed to fully account for Dr. Kenderline's opinions. *See* Pl.'s Op. Br. at 15-17. In particular, Brown argues that the ALJ failed to incorporate Dr. Kenderline's opinions that (a) Brown was moderately limited in his ability to maintain appropriate behavior in a work setting and complete a normal workday or week without interruptions from his psychologically based symptoms, and (b) not stable enough to tolerate or sustain employment. *Id.*

With respect to Brown's first contention, he has failed to show error. Brown's argument turns on the fact that when Dr. Kenderline opined that Brown had moderate limitations, he was using moderate to mean "significant." *See* Pl.'s Op. Br. at 15. Brown does not point to any evidence suggesting ALJ Morris misunderstood Dr. Kenderline's opinion here, though. ALJ Morris considered Dr. Kenderline's opinions regarding the scope of Brown's limitations and translated them into a residual functional capacity ("RFC"), as he was tasked with doing. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Brown has consequently failed to show error.

As to the second of Dr. Kenderline's opinions, the ALJ was entitled to disregard Dr. Kenderline's general statement that Brown was unable to tolerate employment because that is a conclusion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Martinez v. Astrue*, 261 F. App'x 33, 35 (9th Cir. 2007). The ALJ thus did not harmfully err in evaluating Dr. Kenderline's opinions.

///

### 4. The ALJ Did Not Err in Finding that Brown Would Not Be Disabled If He Stopped Using Alcohol

Brown argues that the ALJ's opinion was inconsistent with respect to whether his disability would persist if he stopped abusing alcohol. In cases involving substance abuse, the ALJ must conduct a two-stage analysis of the claimant's limitations. First, the ALJ conducts the normal five-step sequential evaluation[3] without attempting to determine the impact of alcohol abuse on the claimant's other impairments. *See Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). Second, if the ALJ finds that the claimant is disabled and there is evidence of alcohol abuse, the ALJ must determine whether the alcohol abuse "is a contributing factor material to the determination of disability." *See* 20 C.F.R. §§ 404.1535(a)-(b), 416.935(a)-(b). In other words, the ALJ must determine whether the claimant would still be disabled if he stopped using alcohol. *See Bustamante*, 262 F.3d at 955. The claimant bears the burden of proving that his alcohol abuse is not a contributing factor material to his disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

In 2013, the SSA published SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), which provided guidance for evaluating whether a claimant's substance use is material to the disability determination. Of note here, SSR 13-2p discussed how the SSA would consider periods of abstinence, noting that because each substance has different intoxicating and long-term effects, the SSA was "unable to provide exact guidance on the length and number of periods of abstinence to demonstrate whether [drug addiction and alcoholism] is material in every case." *Id.* at *12. However, the SSA stated in a footnote that "if . . . a claimant is abstinent and remains disabled throughout a continuous period of at least 12 months, [drug addiction and alcoholism] is

---

[3] *See* 20 C.F.R. §§ 404.1520, 416.920.

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 15

not material even if the claimant's impairment(s) is gradually improving." *Id.* at 13 n.26.

Here, ALJ Morris found that from October 2010 through December 2015, Brown's impairments, including substance use disorder met the criteria for impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which meant that he was disabled. *See* AR 860; 20 C.F.R. §§ 1520(d), 416.920(d). However, ALJ Morris also found that Brown's alcohol abuse was material because if he stopped using alcohol, his impairments would not equal a listed impairment, and he would not be disabled. *See* AR 862-64.

Brown argues that these findings are inconsistent and violate SSR 13-2p. He bases this argument on a single clause in ALJ Morris's decision suggesting that Brown had been abstinent for over a year during the period in which he was disabled (when substance use disorder is taken into account). While discussing the extent of Brown's impairments in terms of interacting with others, ALJ Morris stated that "during [Brown's] year-plus period of sobriety for part of 2013 and 2014, he was able to mend his relationship with his two daughters, which had previously been strained due to his alcoholism." AR 863.

The Court is not persuaded that Brown has met his burden of proving disability. It is clear from ALJ Morris's decision that he found Brown's primary impairment to be due to his substance use disorder. *See* AR 860-62. While the ALJ mentioned a period of sobriety, he did so only in the context of explaining that Brown's symptoms improved during that period. *See* AR 863. And ALJ Morris made no specific finding as to whether Brown experienced a continuous 12-month period of abstinence. Substantial evidence justified the ALJ's finding that Brown would not be disabled if he stopped using alcohol, and thus the decision is affirmed. *See Lohmeier v. Colvin*, No. CV-14-02247-TUC-BPV, 2016 WL 825850, at *8 (D. Ariz. Mar. 3, 2016).

### 5. The ALJ Did Not Err in Finding That Brown Would Have One Unexcused Absence Every Two Months

Brown's final argument is that ALJ Morris's determination that Brown would have one unexcused absence every two months was unsupported by substantial evidence. *See* Pl.'s Op. Br. at 18-19. Brown argues that his testimony established he would miss more than one day of work every two months, no doctor opined that he would miss only one day every two months, and "[t]he ALJ cited no evidence contrary to [Brown's] testimony." *Id.* at 18. Brown's argument ignores two facts. First, the ALJ justifiably rejected his testimony. *See supra* Part II.B.1. The ALJ was accordingly under no obligation to incorporate Brown's attested limitations into the RFC. *See Bayliss*, 427 F.3d at 1217-18. Second, Brown had the burden of proving disability. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). It was his obligation to present affirmative evidence of a limitation, but he has not pointed to any evidence that the ALJ credited showing he would miss more than one day every two months. Brown has thus not shown any limitations that the ALJ failed to include in the RFC, and has in turn not shown error.

### III. CONCLUSION

Based on the foregoing, the Court finds that the ALJ properly concluded that Brown was not disabled. Accordingly, the Commissioner's decision to deny benefits is AFFIRMED.

DATED this 17th day of September, 2018.

                                                                               Ronald B. Leighton
                                                                               United States District Judge